John A. SEALY, Jr. and Marva Sealy, minors by their Guardians, John A. Sealy and Pleasant E. Sealy, h/w; and John A. Sealy and Pleasant E. Sealy, h/w, in their own right et al.

v.

DEPARTMENT OF PUBLIC INSTRUCTION OF PENNSYLVANIA, Dr. Charles H. Boehm, Supt. of Public Instruction et al.

Civ. A. No. 22569.

United States District Court
E. D. Pennsylvania.

Aug. 28, 1957.

On Petition to Amend Oct. 7, 1957.

Joseph A. McNeal, Philadelphia, Pa., for plaintiffs.

R. W. Beatty, Media, Pa., G. F. B. Appel, Philadelphia, Pa., R. E. Larson, Media, Pa., for defendants.

GANEY, District Judge.

Upon the hearing in the application for the injunction, the Court makes the following

Findings of Facts

1. Delaware County is divided into 49 political subdivisions of various sizes and classifications.

2. The Township of Darby, originally consisting of a substantially larger area than presently, was incorporated in the year 1683. The Borough of Darby was incorporated out of the Township of Darby in 1853, and the Borough of Colwyn in 1892, and, likewise, the Borough of Folcroft in 1922. The Borough of Collingdale was incorporated out of the Borough of Darby in 1891, and Sharon Hill out of the same Borough in 1890, and the Boroughs of·Darby, Collingdale, Sharon Hill, Colwyn and Folcroft became independent school districts.

3. As a result of the formation of the above named Boroughs, the Township and School District of Darby, as now geographically constituted in two non-contiguous sections, have been in existence since 1890, the upper section thereof comprising Wards 3, 4 and 5 is separated from the lower section thereof, comprising Wards 1 and 2, by the Boroughs of Collingdale, Sharon Hill and Folcroft.

4. The 1950 census for Darby Township indicated that 89%10 percent of the population living in the lower section thereof, or Wards 1 and 2, were of the Negro race, and that 47%10 percent of the population in the upper section thereof, or Wards 3, 4 and 5, were of the Negro race.

5. The 1956 school census for Darby Township, however, showed a shift in the racial difference, which indicated that the upper section comprising Wards 3, 4 and 5 had only a Negro school population of 4%10 percent, and that the Negro school population of the lower section comprising Wards 1 and 2 would be 95%10 percent.

6. In this same 1956 census, the school population of the upper section of Darby Township for children up to 17 years of age totaled 3,641, of whom 172 were of the Negro race. However, there were only 1,480 attending public schools by virtue of the fact that the Catholic Parochial School took 59%10 percent of the school population of 2,161 pupils, 2,-153 of whom were white and eight of whom were Negro.

7. In the lower section of Darby Township, the school population as of 1956 was 1,335, 1,280 or 95%10 percent of whom were Negro, attending the public schools and 72 were attending Parochial School, 53 of whom were Negro and 19 of whom were white. This leaves 1,480 public school students in the upper section as opposed to 1,263 public school students in the lower section.

8. On September 11, 1952, the defendant, School District of the Township of Darby, by formal action of the Board of Directors—all of the members of the Board present being of the Negro race— determined that a section of a plot of land already acquired at Ashland and Bartram Avenues in what has been described as the upper section of Darby Township School District comprising Wards 3, 4 and 5 be reserved for a site for a possible future junior high school.

9. A great many factors were considered by the Board in the determination of the site for the junior high school to be located in the upper section of the Township—the influx of population of school age; requirements for junior high school facilities; the census for 1953 which showed a population of 8,608 for the whole of Darby Township with 5,439 settled in the upper or northern section in Wards 3, 4 and 5 and 3,170 in the southern section, or Wards 1 and 2; the report on where the school population for a junior high school was presently located and where the projected school population for 1959 and 1960 would be located, as well as a consideration of the fact that representatives of civic associations had been called to meetings for the purpose of discussing the location of the proposed site; and the further fact that while a large number of the school population was attending Catholic Parochial School, it was thought that with the erection of a fine, new building with modern facilities, that a number of pupils would return to the public school system and enter the junior high school, or at least pro-

vision should be made for such eventuality.

10. The record discloses in no instance a single iota of testimony that the consideration of the Darby Township School District Board, in the selection of the site for the proposed new junior high school and its construction thereon, was motivated by any racial discrimination whatsoever, and the record is equally clear concerning the Department of Public Instruction, State Council of Education and the State Public Building Authority, as well as every other defendant here of record.

11. The Department of Public Instruction and the State Council of Education exercise broad supervisory powers in a general way, but the actual administration of the school system in Pennsylvania is in the hands of the local school authorities (Art. 5 of the Public School Code of 1949, 24 P.S. § 5–501 et seq.).

12. The Delaware County Plan, which envisions school administrative units for all of Delaware County, was formulated by the Delaware County School Directors in conjunction with the local school authorities, and was approved by the State Council of Education, and all local school board secretaries were notified by letter dated July 22, 1953.

13. Under the Plan, Darby Borough and Darby Township are joined as Administrative Unit Number Nine. The Plan provides for two elementary school attendance areas in Darby Township, one in the upper section and one in the lower section and makes all of Darby Township one junior high school attendance area and joins Darby Township with Darby Borough as one single high school attendance area under the Plan.

14. Administrative Unit Number Five under the Plan embraces Colwyn Borough, Collingdale Borough, Folcroft Borough and Sharon Hill Borough, all contiguous, each to the other, and comprised of a school population which is almost entirely white.

15. The Plan itself is not self-executing, but provides for its implementation, that is, for the realization of the administrative units set forth in it by three methods, to wit, joinder, union or merger, the former being accomplished by the vote of the school districts concerned and the latter two by submitting the proposals in the Plan to the electorate for their approval.

16. The State Public School Building Authority, which is one of the defendants herein, is a public corporation and a governmental instrumentality of the Commonwealth of Pennsylvania, which was created for the purpose of constructing, improving, maintaining and operating public school buildings as part of the school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction, has approved a deed to it, executed and acknowledged by the proper officers of the School District of Darby Township of the site in the upper section of Darby Township on which the new Darby Township Junior High School is to be located, but the deed has not as yet been recorded by reason of the present suit; further the authority has contracted to lease the site of the school, when completed, to the School District of Darby Township, and has prepared to advertise for bids for the construction of the school.

17. There is a pressing necessity for a new junior high school in Darby Township, since the present junior high school located in the lower section of the Township is inadequate for housing pupils and is in a rather bad state of deterioration. The present Plan of the Darby Township School Board contemplated remedying the overcrowding in the lower section by using the present junior high school for intermediate grades. Additionally, if the injunctive process prevents the completion of the proposed junior high school and a new application is required for a different project, it will have to take its place behind some 518 pending applications, and no state reimbursements for new projects would be available until 1962. The present financing arrangements called for a three percent interest rate with a total cost to Darby Township of $1,887,424, and if the District cannot

participate in the State reimbursement presently allocated to it and would proceed in the open market, it would have to pay an interest rate of at least four and one-half percent, which would be an increased cost to the taxpayers of more than $880,000.

## Discussion

There are two contentions posed by the injunction herein sought. The first involves the location of a new junior high school to be constructed in Darby Township, which, as has been indicated, comprises two non-contiguous areas—the upper section with a predominately white population and the lower section with a predominately Negro population, and it is alleged that the location of the said new junior high school in the upper section of Darby Township is discriminatory of the rights of the Negro population in the Township.

The second contention is that the Delaware County Plan for the reorganization of administrative units is likewise racially discriminatory, since Administrative Unit Number Nine groups together under the Plan, Darby Township and Darby Borough, which contain a relatively large percentage of Negroes as well in the general population and the school population. This alignment groups a large Negro population together, even though they are non-contiguous and are separated from each other by the school districts of Collingdale, Sharon Hill and Colwyn, which is Administrative Unit Number Five, and which is predominately white.

With respect to this second contention, the Court herewith holds in abeyance and retains jurisdiction with respect thereto, because the State Superintendent of Public Instruction has advised that the Delaware County Plan will be reconsidered at a meeting of the State Council of Education in September, insofar as Administrative Units Numbers Five and Nine are concerned, and since there is no immediacy with respect to the approval or disapproval of the Plan as such, the Court will await the decision of the State Council of Education's decision with respect to them.

The problem of the construction of the new junior high school, however, is one of great urgency, as has been indicated by the findings of facts, for if this construction were held up for even a relatively short time, it might possibly mean that the moneys for this construction would be withdrawn, and in that event, the loss to Darby Township School District would be well over three-quarters of a million dollars, by virtue of its having to pay higher interest rates elsewhere, and the very great possibility that construction of the new junior high school would be delayed at least two and possibly five years. The consequences which would flow from the issuance of an injunction here would be a distinct blow to education in the Darby Township School District.

The first point to be disposed of is the allegation that this Court should have convened a three-man Court to dispose of the constitutional question here involved as provided for in 28 U.S.C. § 2282. However, while originally, the plaintiffs' complaint could be interpreted as an attack on the constitutionality of the Public School Code of Pennsylvania, after filing two additional amended complaints, counsel stated openly that he was not attacking the constitutionality of any statute as such, but was merely attacking the acts and practices of the various defendants named, and especially the acts and practices of the defendants in the application of §§ 261 and 1701 of the Public School Code of 1949, 24 P.S. §§ 2–261, 17–1701. In other words, it is clear from the record that he is attacking merely the rules and procedures, as well as the method of enforcement provided under the Public School Code of 1949 and not the statute itself. Such situation does not call for the convening of a three-man Court, but can be proceeded in the District Court before a single judge. Webb v. United States, D.C.E.D.Pa.1957, 21 F.R.D. 251.

The problem here involved is a relatively simple one, although a rather

formidable record has been made, since the Court granted plaintiffs a wide latitude in view of the current constitutional controversies concerning segregation and discrimination, and every opportunity was afforded to them to bring upon the record any showing thereof. However, the record is barren of such a showing. The plaintiff continually adverted, throughout the trial and during argument, to the recent cases under the Equal Protection Clause of the Fourteenth Amendment, Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Clemons v. Board of Education of Hillsboro, Ohio, 6 Cir., 228 F.2d 853, as well as Board of Education of School District of City of Dayton v. State ex rel. Reese, 114 Ohio St. 188, 151 N.E. 39. However, none of these cases is applicable to the factual situation here involved. Here, all junior high school students in Darby Township, Negro and white, will have an opportunity to attend the proposed new junior high school, and, while, it is to be located in the upper section of the Township rather than the lower section, no matter in which section of the non-contiguous Township it is located, pupils of one or the other section must go by bus some two miles in order to attend, and, although the showing is clear that by far the larger number of junior high school students are Negroes in the lower section, if the site selected were in the lower section, it would compel all junior high school pupils, both Negro and white, to go by bus to the lower section. So, it amounts to solely, it seems to the Court, that the plaintiffs' complaint is largely one of inconvenience. It may well be that the final determination is not the best site that could be selected, but this Court has no authority to review the actions of the local school authorities in selecting a site for the location of the school, since the location of the school is primarily a question to be decided by the Local Board of School Directors, and even a State Court could only interfere when there is such a manifest abuse and the action of the Board amounts to arbitrary will and caprice.

Spann v. Joint Board of School Directors, 381 Pa. 338, 113 A.2d 281; Regan v. Stoddard, 361 Pa. 469, 65 A.2d 240. Here, even abuse of discretion was not shown, even though one might feel that if he had chosen the site, he would have located it somewhere else in the School District.

Since the Court has held in abeyance the regulations of the Delaware County Plan respecting Administrative Units Numbers Five and Nine, such action, as has been indicated, does not preclude the Court from disposing of the question of the selection of the site and the proposed construction of a junior high school in the upper section of Darby Township School District on the basis of racial discrimination. The Delaware County Plan is a proposed grouping of school districts and is at best only a hope, because the implementation of the Plan must be done either by a vote of the electorate or by resolution of the various boards contemplated within the group. The Borough of Darby, which is the other administrative unit in Unit Number Nine under the Plan is in no wise here concerned, since Darby Township School District is a school attendance area for a junior high school in itself and in reality Administrative Unit Number Nine concerns itself only on the senior high school level, and though it might be possible that at some future date some portion of Darby Township would be joined with another unit as a school attendance area, we cannot envision that which might possibly happen in the future, but must concern ourselves solely with the conditions as they obtained at the time the cause of action was brought.

### Conclusions of Law

1. The parties are properly before the Court, and the Court has jurisdiction of the subject matter herein contained by reason of the fact that the action is brought under the Fourteenth Amendment to the Constitution, § 1, and Title 42 of the United States Code, §§ 1981 and 1983.

2. None of the defendants herein named was in any way racially motivated, nor was any discrimination whatsoever regarding race exercised by any or all of them in the selection of the site or the approval given for the construction of a proposed junior high school in the upper section of Darby Township.

3. The proposed construction of the new junior high school, while in conformity with the Delaware County Plan, and approved by the Department of Public Instruction, the State Council of Education and the State Public School Building Authority of Pennsylvania, such conformity coincides with only one facet of the Delaware County Plan, and since Darby Township is a proper school attendance area for a junior high school and has been so declared, its construction in no wise approves of the Plan, for it does not involve the other administrative unit thereof, Darby Borough, and can stand on its own merit, since the Administrative Unit Number Nine as such does not become involved, as it concerns itself primarily with functioning at the senior high school level.

Accordingly, the Court will retain jurisdiction in the matter concerning the alleged unconstitutionality of the acts and practices under the Delaware County Plan, but herewith denies the application for an injunction to restrain the proposed construction of the junior high school in the upper section of Darby Township. With respect thereto, an appropriate order, when submitted, will be signed by the Court.

Sur Request to Amend Findings
of Facts and Conclusions
of Law and Motion
for New Trial

This concerns itself with a motion to amend the Court's Findings of Facts filed on August 27, 1957, and in connection therewith, the following disposition is made of the suggested amended findings:

1. The third Finding of Fact in the Court's opinion, sets forth primarily that Darby Township constituted two non-contiguous sections which have been in existence since around 1890; more specifically, part of it was annexed in 1921 to Collingdale Borough; in 1922 Folcroft Borough was annexed, and in 1923 part of it was annexed to Glenolden Borough, but, as has been indicated, it has been non-contiguous since 1890.

2. Plaintiffs' request No. 2 is denied.

3. Plaintiffs' request No. 3 is denied, since the record discloses that school population means school and pre-school pupils.

4. Plaintiffs' request No. 4 is denied, as being repetitious of phrasing, as set forth in the third suggested finding.

5. Plaintiffs' request No. 5 is denied.

6. Plaintiffs' request No. 6 is denied.

7. Plaintiffs' request No. 7 is denied.

In connection with the statement in the plaintiffs' position headed Further Amended Findings of Facts, they are disposed of as follows:

1. The requested findings are not necessary to the determination of the issue, since they concern themselves with actual school population as of May 1, 1957. The School Board of Darby Township on September 11, 1952, when it made its judgment with respect to the selection of a proposed junior high school, had to take into consideration all of Darby Township school population—those attending public schools as well as those attending Parochial Schools and those of prospective school age, as well as the possibilities for the future which these and kindred problems such as finances and economics posed.

2. Plaintiffs' request No. 2 is denied.

3. Plaintiffs' request No. 3 is denied.

4. Plaintiffs' request No. 4 is discussed in finding No 1 herein.

5. Plaintiffs' request No. 5 is denied.

6. Plaintiffs' request No. 6 is denied.

7. Plaintiffs' request No. 7 is denied.

8. It is a fact that Darby Borough, through the office of its secretary, George W. Atkins, objected on September 16, 1953 to the proposed linking of it with Darby Township in Administrative Unit

Number Nine. However, this fact has no bearing on the immediate issue, which concerns the issuance of an injunction to prohibit the construction of the junior high school in the upper section of Darby Township, and this consideration is reserved for the disposition of the issue posed under the proposed County Plan.

The motion to delete Conclusions of Law No. 2 and No. 3 is denied.

The motion for a new trial is likewise denied.