John A. SEALY, Jr., et al., Appellants,

v.

DEPARTMENT OF PUBLIC INSTRUCTION OF PENNSYLVANIA et al.

No. 12438.

United States Court of Appeals Third Circuit.

Argued Jan. 24, 1958.

Decided Feb. 5, 1958.

As Amended March 14, 1958.

---

Joseph A. McNeal, Philadelphia, Pa., for appellants.

Howard M. Lutz, Media, Pa., for School Dist. of Darby Tp., Board of School Directors of School Dist. of Darby Tp., and Donald L. Snively, Superintendent of Schools.

Stephen B. Narin, Philadelphia, Pa., for Dr. Charles H. Boehm, Supt. of Public Instruction, Dept. of Public Instruction of Pennsylvania, and Pennsylvania State Council of Education.

George F. Baer Appel, Philadelphia, Pa., for State Public School Building Authority of Pennsylvania.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and WRIGHT, District Judge.

BIGGS, Chief Judge.

The plaintiffs, minor Negro children, by their parents as guardians *ad litem*, and the parents themselves, all residents of Darby Township, Delaware County, Pennsylvania, brought suit in the court below, invoking jurisdiction under Sections 1331 and 1343, Title 28 U.S.C., under Sections 1981 and 1983, 42 U.S. C.A., and under the Fourteenth Amendment. The plaintiffs allege that because they are Negroes they have been discriminated against as to the location of a new junior high school which the defendants, the Department of Public Instruction of Pennsylvania, the Superintendent of Public Instruction of Pennsylvania, the Board of School Directors of Delaware County, the Delaware County Superintendent of Schools, the Board of School Directors of Darby Township, and the individuals comprising these authorities, have decided to locate in the upper or northern segment of Darby Township instead of in its lower or southern segment, the Township being comprised of two non-contiguous areas divided by certain boroughs of Delaware County.

The plaintiffs allege that the "Delaware County Plan", 24 P.S.Pa. 2–261 to 2–264, proposed by the school authorities referred to and their individual members has resulted in a practical segregation of Negro students, residents of Wards 1 and 2, constituting the lower or southern segment of Darby Township, by electing to place the new junior high school in Wards 3, 4 and 5, constituting the upper or northern segment of Darby Township on land already purchased, despite the fact that the present or old junior high school is now situated in the lower or southern segment of the

Township and has been so situated for many years. The result, the plaintiffs allege, will be to cause Negro students to be transported two and a half miles by bus or other conveyance across contiguous boroughs, past high schools as distinguished from junior high schools, despite the fact the Negro population of Darby Township is situated largely in its lower or southern segment, thus effecting by gerrymandering a discriminatory school system based on segregation by race.

The prayers of the complaint and the amendments thereto seek to enjoin the building of the proposed new junior high school in the upper or northern segment of Darby Township and the effecting of the Delaware County Plan.

■ Some of the defendants in their answers first sought the interposition of a three-judge statutory court to dispose of the case pursuant to the provisions of Sections 2282 and 2284, 28 U.S.C., apparently because of the view that the plaintiffs were seeking to test the constitutionality of Pennsylvania statutes, but these prayers were not pressed and the case was heard below by a court comprised by a single judge. It appears that the constitutionality of the statutes of Pennsylvania is not attacked by the plaintiffs but rather the method in which the statutes were or are being applied by the school authorities. We agree that the case was one to be heard by a single judge. Mere attack on regulations or method of enforcement of a statute is not sufficient to justify the interposition of a three-judge court. Ex parte Bransford, 1939, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249, William Jameson & Co. v.

Morgenthau, 1938, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189.

After answers were filed extensive testimony was taken on hearings for the preliminary and final injunctive relief sought by the plaintiffs. The court below handed down an opinion on August 27, 1957, 159 F.Supp. 561. It appears from the opinion and the findings of fact that the court was of the view that the relief sought by the plaintiffs was "multiple" specifically that the relief sought by the plaintiffs to enjoin the Board of School Directors of Darby Township and the other defendants from taking any action or refraining from taking any action contemplated or necessary in connection with the conveyance of land, the leasing thereof, the location, construction, erection and financing of the new junior high school in the upper or northern segment of Darby Township, was unrelated to other relief sought by the plaintiffs which related primarily to the administrative units and attendance areas in Delaware County under the Delaware County Plan. The court below, making reference to Rule 54(b), Fed. R.Civ.Proc., 28 U.S.C., and an express determination that there was no just reason for delay, on September 7, 1957 entered judgment on the claim first described in favor of all the defendants and against all the plaintiffs denying the injunctive relief sought by the plaintiffs while retaining jurisdiction of the second claim referred to above. The judgment of September 7, 1957 is appealed from.[1]

■■ The plaintiffs have bottomed their case squarely on the issue that they have been discriminated against and seg-

---

1. Later, on December 19, 1957, the court below entered another judgment disposing of the other claim which the court below stated as relating to attendance areas and administrative units under the Delaware County Plan concerning which expressly it had reserved jurisdiction. Executive relief was granted the plaintiffs and the Delaware County Plan was disapproved by the Pennsylvania School Authorities after the entry of the court's judgment on September 9, 1957. The

court concluded that the claim reserved had become moot and gave final judgment on it in favor of all the defendants and against all the plaintiffs. For the reasons which appear in this opinion we need not pass on the validity of this disposition.

The order of the court below of December 19, 1957 was included in the record of this appeal by order of this court. The order has not been appealed from.

regated because of their race by the proposed location of the new junior high school. Unless this issue be proved a United States court has no authority to intervene in a domestic difficulty as to where a school should be located in a township. The location of schools assuredly is one for state school authorities and local school boards; for state, not national courts, unless there be a deprivation of rights guaranteed by the Fourteenth Amendment. The plaintiffs have failed to prove their case. The court below stated, Finding of Fact No. 10: "The record discloses in no instance a single iota of testimony that the consideration of the Darby Township School District Board, in the selection of the site for the proposed new junior high school and its construction thereon, was motivated by any racial discrimination whatsoever, and the record is equally clear concerning the Department of Public Instruction, State Council of Education and the State Public Building Authority, as well as every other defendant here of record."

This is indeed a strong statement for a court to make but it is probably not too strong. While it is clear that the greater portion of the Negro population of Darby Township resides in the lower or southern segment it is equally apparent that a great many factors had to be considered and were considered by the Board of School Directors of Darby Township and other officials in determining the location of the new junior high school. Some of these factors are set out in detail in the findings of the court below[2] and need not be discussed with particularity in this opinion. It is clear that in the light of all the factors the Board of School Directors of Darby Township were justified in their proposal to put the new junior high school in the upper or northern segment of the Township. There is no evidence of discrimination or of segregation by reason of race. Segregation or discrimination is not shown by the mere fact that there are presently more Negro students in the lower or southern segment of Darby Township than in its upper or northern segment. Standing alone such a factor will not support an inference of discrimination or segregation.

On this record we, like the court below, can perceive no intent to discriminate or to segregate. One of the startling facts is that at the meeting of September 11, 1952 of the Board, the meeting at which definitive action was taken determining the site for the future junior high school, all of the members of the Board present were Negroes. We are convinced that the Board of School Directors of Darby Township acted in good faith and with a proper exercise of administrative judgment. In any event we cannot say that the findings of fact of the court below were clearly erroneous, Rule 52(a), Fed. R.Civ.Proc., 28 U.S.C., and we cannot reverse the order of the court below appealed from.

The judgment will be affirmed.

---

2. Finding of Fact No. 9, for example, is as follows: "A great many factors were considered by the Board [of School Directors of Darby Township] in the determination of the site for the junior high school to be located in the upper section of the Township—the influx of population of school age; requirements for junior high school facilities; the census for 1953 which showed a population of eight thousand six hundred eight (8,608) for the whole of Darby Township with five thousand four hundred thirty-nine (5,439) settled in the upper or northern section in Wards 3, 4 and 5 and three thousand one hundred seventy (3,170) in the southern section, or Wards 1 and 2; the report on where the school population for a junior high school was presently located and where the projected school population for 1959 and 1960 would be located, as well as a consideration of the fact that representatives of civic associations had been called to meetings for the purpose of discussing the location of the proposed site; and the further fact that while a large number of the school population was attending Catholic Parochial School, it was thought that with the erection of a fine, new building with modern facilities, that a number of pupils would return to the public school system and enter the junior high school, or at least provision should be made for such eventuality."