Onesephor **BROUSSARD** and his wife, as next friend of Richard Wayne, Antonia Marie, Teresa Yvette, Viola Elizabeth, Frank Bernard and Peter O. Broussard, and Queen Ethel Young, as parent and next friend of Chester Lee Young, Plaintiffs,

v.

The **HOUSTON INDEPENDENT SCHOOL DISTRICT**, Glenn Fletcher, Superintendent of the Houston Independent School District, Robert Eckels, as President of the Board of Trustees of the Houston Independent School District, J. W. McCullough, J. K. Butler, Mrs. Charles E. White, Asberry Butler, Mrs. Howard Barnstone and Mrs. A. W. Cullen, Members of the Board of Trustees of the Houston Independent School District, Defendants.

Civ. No. 66–H–334.

United States District Court
S. D. Texas,
Houston Division.
July 13, 1966.

Mandell & Wright, Arthur J. Mandell and William L. Wood, Jr., and Joseph L. Tita, Houston, Tex., for plaintiffs.

Reynolds, White, Allen & Cook, Joe H. Reynolds, Houston, Tex., for defendants.

Memorandum Opinion:

HANNAY, District Judge.

This is a suit for injunction in the nature of a class action against the Houston Independent School District and related parties wherein federal jurisdiction is based upon Title 28, U.S.C.A. Section 1343(3), and relief is sought under the provisions of Title 42, U.S.C.A. Section 1983, which authorizes the commencement of a suit by any citizen of the United States or other person within the jurisdiction thereof to redress the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States done under color of statute, ordinance, regulation, custom or usage of the state. The rights, privileges and immunities herein claimed are allegedly secured by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and Title 42, U.S.C.A. Sections 1981, 1983, 1985, 1986, and 1988. The Plaintiffs are all citizens of the United States, the State of Texas, and are members of the Negro race and are residents of Houston, Harris County, Texas. The Plaintiffs bring this action on their own behalf and on behalf of all other Negro children and their parents in Houston, Texas, who are similarly situated and affected by the policy, practice, custom and usage complained of herein. The activity sought to be enjoined consists of the Defendants' alleged policy and practice of authorizing the construction of public schools and improvements thereon with the alleged purpose and effect of perpetuating racial segregation in the public school system of the Houston Independent School District.

More particularly, the injunction suit is directed against the School District's

extensive school building and improvement program which is now under way and the execution of building contracts which are necessary to implement the program. The building and improvement of schools in areas now predominately inhabited by Negroes is claimed to have the calculated effect of perpetuating racial segregation in the schools by reinforcing the existing pattern of school locations.

The Court has granted a full hearing on the petition for injunction. In addition to the full hearing, the Court has visited some seventeen of the school locations in question here and about which more later.

The parties have agreed and stipulated to limit the scope of the claimed relief to building and improvement projects which are largely in the preliminary planning stage and to exclude those projects which are substantially completed, which only remotely involve the question of perpetuating segregation, or which deal with improvements that will not result in the increase of student capacity in the particular school.

## FINDINGS OF FACT

The Houston Independent School District is the sixth largest in the nation. It has some 212 school campuses at the present time and has a student enrollment of approximately 225,000, of which approximately 30% are Negroes. Until commencement of public effectuation of the United States Supreme Court's decision in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, which now prohibits compulsory segregation in the public schools on a racially discriminatory basis, public school attendance in Houston was based upon the legal separation of Negro and white students. The general location of public schools and the assignment of students to those public schools was on a neighborhood basis. (The "neighborhood system" means the location of public schools in the vicinity where its attending students live; i. e., the schools

are placed where the students are.) The racial composition of their respective neighborhoods was in former times generally exclusive one of the other. Today, in Houston, Negro expansion into and settlement in once all white neighborhoods is witnessed in a number of places along with the elimination of racially discriminatory barriers in that area. But this legally supported migration of Negroes into once all white neighborhoods has no *de facto* parallel in volitional white migration into Negro neighborhoods. The predominately Negro neighborhood of former times remains predominately Negro in Houston today. On the other hand, it is clear that the neighborhood school system is based upon a host of reasonable and compelling practical considerations. As stated by the Court of Appeals in Springfield School Committee v. Barksdale, 1 Cir., 348 F.2d 261, 264:

"The neighborhood plan is not simply a matter of administrative convenience and cost. In the elementary schools there are problems of transportation which may seem important to individual families, and there is, of course, beyond that the much mooted issue of large scale 'bussing.' Pedestrian crossing of traffic arteries is dangerous for the lower ages. Other values may exist both for the children and the parents, in having the school close to the home. Correspondingly, the very correction of racial imbalance may have adverse effects upon the educational environment."

In this twilight between the elimination of legal barriers to racial non-discrimination in public schools and the continued *de facto* environmental separateness of white and Negro neighborhood life, the public school authorities in Houston have approached the resulting impasse in a two-fold way. One step has been to grant unlimited freedom of choice subject to a judicially approved plan of desegregation. The other step, also judicially approved, has been to provide and route busses to give meaning-

ful effect to the free exercise of school choice.

This judicially approved Plan of Desegregation in Houston has now achieved total *de jure* desegregation in the elementary schools. At the secondary level, the senior high schools, total *de jure* desegregation will become effective on September 1, 1966. Unrestricted freedom of choice will obtain thereafter at that level. After September 1, 1966, the only grade that will remain segregated will be the ninth grade. Under the Plan, the ninth grade will be desegregated beginning September 1, 1967. Presently, it is only in respect to the ninth grade that racially dual boundaries exist in the Houston School District. This last vestige of dual boundaries will be legally eliminated after September 1, 1967. Thereafter, there will be no boundaries and in contemplation of law there will be unrestricted freedom of choice to attend whatever public school the student desires.

Under the Plan, busses generally will operate from particular areas beginning September 1, 1966. In Negro neighborhoods, two busses will operate. One will go to an heretofore predominately white school. The other will go to a Negro school. In this manner, the children will be able to select the school they wish to attend by the bus they ride.

The record shows that practical shortcomings and administrative impediments to full freedom of choice remain. A remediable deficiency appears in the area of notice to the Negro parents in respect to both private communication and public information. Letters by registered mail should be sent out forthwith informing parents fully of developments under the "freedom of choice" plan and of the choices available to them.

Generally speaking, the School District strives to have elementary schools located about two miles apart, junior high schools about three miles apart, and senior high schools about six miles apart. (Testimony of Mr. Glenn Fletcher, Acting Superintendent of the Houston Independent School District, given June 8–9, 1966.) As the school system oper-

ates, the elementary schools feed the junior high schools, and the junior high schools in turn feed the senior high schools. This "feeder system," broadly speaking, determines the assignment of students who are graduating from one level to the next advanced one. It is part and parcel of the neighborhood system of student assignment and with it is subject to an overriding "freedom of choice" as to school attendance. Generally, in accordance with the practical dictates of the neighborhood and feeder systems, the student cards of both white and Negro students graduating from elementary school are sent to a predetermined secondary school. This effects an automatic pre-registration for the coming year, and classes are set up as soon as possible based upon the records received. The overriding "freedom of choice" has required the approval of the principals of both schools and the existence of adequate classroom space with those within the general operation of the feeder system having priority status. Eligible applicants for transfer are accorded priority status on the basis of territorial proximity to the particular school. Heretofore, the burden of transportation has been generally on the students invoking "freedom of choice." As indicated heretofore, bus availability for Negro students seeking to transfer is being substantially improved on an immediate basis under the Plan of Desegregation.

On the whole, I find that there is insufficient basis to conclude that the Houston Independent School District has acted other than in good faith and with appropriate dispatch in giving effect to the mandate of Brown v. Board of Education of Topeka, supra. This is not to say, as will be demonstrated hereafter, that the indicated limitations and others should not be the object of continued public attention and ameliorative action.

### CONCLUSIONS OF LAW

Reason and the weight of present authorities make it clear that the neighborhood system of public school location is not *per se* unconstitutional. Downs v. Board of Education of Kansas City,

10 Cir., 336 F.2d 988, cert. den., 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800; Springfield School Committee v. Barksdale, 1 Cir., 348 F.2d 261; Bell v. School City of Gary, Indiana, 7 Cir., 324 F.2d 209, cert. den., 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216; Sealy v. Department of Public Instruction of Pennsylvania, 3 Cir., 252 F.2d 898; Bradley v. School Board of City of Richmond, Virginia, 4 Cir., 345 F.2d 310, 318–319, vacated and remanded on other grounds, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187; Gilliam v. School Board of City of Hopewell, Virginia, 4 Cir., 345 F.2d 325, vacated, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187. See also: Wanner v. County School Board of Arlington County of Virginia, 245 F.Supp. 132, and Wheeler v. Durham City Board of Education, 4 Cir., 346 F.2d 768.

■■ It is appropriate to note here that at this stage in time the perfection of the "freedom of choice" system—with progressive expansion and sharpening of standards—has been deemed the appropriate approach to satisfying constitutional demands in the field of public school racial desegregation within the Fifth Circuit. Singleton v. Jackson Municipal Separate School District, 5 Cir., 355 F.2d 865, 870–871. To these general principles is added the proposition that the Constitution, as expounded by Brown v. Board of Education of Topeka, supra, does not compel racial intermingling in public schools in any particular degree or form but simply forbids enforced segregation on a racially discriminatory basis. Downs v. Board of Education of Kansas City, supra, 336 F.2d at 998, and authorities cited; Bell v. School City of Gary, Indiana, supra, 324 F.2d at 213, where it is stated:

"'* * * [T]here is no affirmative U. S. Constitutional duty to change innocently arrived at school attendance districts by the mere fact that shifts in population either increase or decrease the percentage of either Negro or white pupils.'"

■ In Taylor v. Board of Education, etc. of New Rochelle, 191 F.Supp. 181 (D.C.N.Y.), affirmed in 2 Cir., 294 F.2d 36, cited and relied on by Petitioners here, the Board of Education failed to show that it had acted diligently and in good faith to implement desegregation generally and in respect to a particular school location. The Court found that its history of discriminatory practices was racially motivated and forbade the construction of a new school on the site of the old. *Taylor* is inapplicable to instant case on the facts, but it is instructive as to the duty of school officials and the courts to give meaning and effect to Brown v. Board of Education of Topeka, supra. Indeed, the case authorities on school desegregation fairly make for a chorus of unanimity on the duty to maintain a forward looking posture in this field. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19; Singleton v. Jackson Municipal Separate School District, supra; Board of Public Instruction of Duval County, Florida v. Braxton, 5 Cir., 326 F.2d 616; Ross v. Dyer, 5 Cir., 312 F.2d 191; Bush v. Orleans Parish School Board, 5 Cir., 308 F.2d 491; Augustus v. Board of Public Instruction, 5 Cir., 306 F.2d 862.

■ But here in Houston in traditional white neighborhoods and in the border areas where there is or is likely to be a substantially mixed neighborhood or public school attendance, I find no instance in which the location of the new facility or improvement appears calculated to discriminate racially against Negroes. In the some seventeen school locations which I personally toured and inspected, the present neighborhood need for the facility is clear. Clear present need and other relevant factors such as accessibility of the facility, the safety and physical convenience of the student, the minimal exposure of the younger students to non-supervision, the home and family and community advantages of a nearby school, a due regard for prevailing traffic arteries and patterns, and the general feasibility characterize the local school building project rather than the sugges-

tion of intended racial discrimination. I do not find the ghettos or ghetto conditions suggested by counsel for Plaintiffs.

From the foregoing it follows that the Petition for injunction to enjoin the Defendants and their agents, representatives, employees and successors from

1. Constructing elementary, junior and senior high schools in the Houston Independent School District;

2. Acquiring and condemning land; and

3. Soliciting bids, accepting bids or distributing funds, letting contracts, executing contracts, or doing or having done by others any act furthering the proposed building program approved by the Board of Trustees of the Houston Independent School District on or about the 3rd day of March, 1966;

is hereby denied.

■ In Downs v. Board of Education of Kansas City, 10 Cir., 336 F.2d 988, 998, cert. den., 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800, the United States Court of Appeals stated a rule of decision fully applicable in this case:

"We conclude that the decisions in Brown and the many cases following it do not require a school board to destroy or abandon a school system developed on the neighborhood school plan, even though it results in a racial imbalance in the schools, where, as here, that school system has been honestly and conscientiously constructed with no intention or purpose to maintain or perpetuate segregation."

I do specifically find and hold, in line with the above, that the Defendants herein, in accomplishing the three things sought by Plaintiffs to be enjoined, did so in good faith and acted honestly, conscientiously, and with no intention or purpose to maintain or perpetuate segregation.

The foregoing shall constitute findings of fact and conclusions of law in this case.

This is and constitutes a final judgment herein.

The Clerk will notify counsel.